

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MAZELMINTS, INC.,            )
                             )
    *Plaintiff,*       )
                             )
                             )   Case No. 1:10-cv-1117
v.                           )
                             )
IT'S A WRAP, LLC             )
and JANNETTE BURNS,          )
                             )
    *Defendants.*     )

### MEMORANDUM OPINION

This is an action for trademark infringement and unfair competition under the Federal Trademark Act of 1946 ("The Lanham Act"), 15 U.S.C. 1025 et seq., and the law of Virginia. The matter came before the Court for bench trial on July 14, 2011.

Four claims were tried to the Court, without a jury. As set forth herein, this Court finds liability against the Defendants for violation of Plaintiff's trademarks, and finds that Plaintiff has not met its burden to prove that it is entitled to damages greater than the actual profits that Defendants earned from the infringing use of the mark. This Court therefore awards damages to the Plaintiff in the amount of $670.42.

### I.

This Court makes the following findings of fact:

Plaintiff, Mazelmints Inc., is a Maryland corporation in Eldersburg, Maryland. Mazelmint's owner and founder is Julie Rosenthal, who testified on behalf of Plaintiff. Defendants are It's A Wrap LLC, a company based in Louisville, Kentucky, doing business through an interactive website with a URL of <www.mymint-tins.com> and Jannette Burns, the

1

owner of that business ("Defendants" or "Burns"). The Court has personal jurisdiction over all of the parties.

Plaintiff is the owner of U.S. Registration No. 3,066,429 for the mark "ENGAGEMINTS" in standard character format in International Class 6 which was issued by the USPTO on March 7, 2006. Plaintiff commenced use of the mark "ENGAGEMINTS" in interstate commerce as applied to "metal containers used as novelty gift items" at least as early as August, 2005. Plaintiff is the owner of U.S. Registration No. 3,343,028 for the mark "ENGAGEMINTS" in standard character format in International Class 30 which was issued by the USPTO on November 7, 2007. Plaintiff commenced use of the mark "ENGAGEMINTS" in interstate commerce as applied to "candy" at least as early as August, 2005. Plaintiff is the owner of U.S. Registration No. 3,080,214 for the mark "ANNOUNCEMINT" in standard character format in International Class 6 which was issued by the USPTO on April 11, 2007. Plaintiff commenced use of the mark "ANNOUNCEMINT" in interstate commerce as applied to "metal containers used as novelty gift items" at least as early as October, 2005.

In late 2008 Defendants commenced selling decorative mint tins, including mint tins and candy under the name "ENGAGE-MINTS." Defendants advertised and sold products under the name "ENGAGE-MINTS" via the <www.mymint-tins.com> website as well as through arrangements with several online retail websites. Defendants' business and products that were sold under this name were not made, approved by, sponsored, or otherwise connected with Plaintiff during the time that the ENGAGE-MINT and ANNOUNCE-MINT marks were offered for sale. Defendant Burns testified that she began to offer mint tins with the ENGAGE-MINT brand at the request of a customer.

When Plaintiff became aware of an infringing use of its ENGAGEMINT mark by the Defendants, around August 2010, Plaintiff sent a cease and desist letter to the Defendants demanding the removal of ENGAGEMINT and ANNOUNCEMINT marks or any variation thereof from the Defendants' website. Upon receipt of the letter and consulting with advisors, Burns removed ENGAGE-MINTS and ANNOUNCE-MINTS brand mint tins from the <www.mymint-tins.com> website. Defendants also contacted partner websites on which their mint tins were sold, and asked that those sellers remove any reference to products using the words ENGAGE-MINTS or ANNOUNCE-MINTS or variations thereof.

Burns manages her online business using the Yahoo Small Business Dashboard, a website management tool. This tool automatically generates "metatags" used by web search engines and did not permit Defendants to make changes to metadata on the website. At trial, Plaintiff presented evidence that Defendants' failure to remove references to the ENGAGE-MINT marks from the metatags of the <mymint-tins.com> website caused that website to appear in a web search (via Google or similar search engines) even after the Defendants ceased offering ENGAGE-MINT and ANNOUNCE-MINT brand mint tins for sale on the site. Plaintiff alleges that the appearance of the infringing marks in the metadata of the Defendants' website diverts customers who would otherwise reach a website authorized to sell ENGAGEMINT brand items, thereby harming Plaintiff's business.

Burns learned that her efforts had not completely removed references to the infringing marks in the metadata of her website. In a final attempt to comply with the Plaintiff's demands, Burns testified that she instructed her attorney to remove the entire <mymint-tins.com> website from the search engine index. Since this step was taken, the Defendants' website ceased to appear in web searches for ENGAGEMINT and ANNOUNCEMINT or variations thereof.

## II.

The Court reaches the following conclusions regarding liability.

The Court finds liability against Defendants on Plaintiff's claims in Count One for Federal Trademark Infringement; Count Two for False Designation of Origin; and two counts under Virginia law for Common Law Trademark Infringement and Common Law Unfair Competition. In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, a plaintiff is first obliged to show the court that "it ha[d] a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir.1995). Both infringement and false designation of origin have five elements. To prevail under either cause of action, the trademark holder must prove: (1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred "in commerce"; (4) that the [opposing party] used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers. *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir., 2005). Trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved. *See Lone Star Steakhouse & Saloon*, 43 F.3d at 930 n. 10. Plaintiff's state law claims rise or fall with the federal claims of infringement and false designation of origin. Therefore, we will not analyze the state law claims separately.

First, the Court finds that Plaintiff possessed valid, protected marks for ENGAGEMINTS and ANNOUNCEMINTS.

Next, the Court finds that Defendants used the marks ENGAGE-MINTS and ANNOUNCE-MINTS in commerce via various websites in connection with the sale, offering for sale, and advertising of novelty mint tins.

Turning to the likelihood of confusion, the Fourth Circuit has delineated a test to guide courts in this determination: (1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir., 1984). *See also Synergistic Intern., LLC v. Korman*, 470 F.3d 162 (4th Cir., 2006).

Considering the relevant factors, this Court finds that the Plaintiff has made such a showing. In this case, the Plaintiff's ENGAGEMINT mark is distinctive and extremely similar to the ENGAGE-MINT designation used by the Defendants. Both Plaintiff and Defendants use the mark to identify and sell novelty personalized tins of mint candies. The parties both engage in the sale of the mints through online websites through which they sell products directly to consumers and to e-commerce retailers as wholesalers. Both parties advertise their products through their websites and through online search engines. Each of the foregoing factors weigh in favor of a finding of infringement.

Weighing against such a finding, there has been insufficient evidence as to malicious intent on the part of the defendants in this case. This Court concludes that the Defendants' adoption of the ENGAGE-MINT mark was innocent. Finally, Plaintiff has presented just one instance of actual confusion by a consumer, out of hundreds of thousands of sales of mint tins. "[E]vidence of only a small number of instances of actual confusion may be dismissed as de

minimis." *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 398 (4th Cir., 2009). Balancing the relevant factors, however, this Court concludes that the Defendants infringed the Plaintiff's registered trademarks for ENGAGEMINTS and ANNOUNCEMINTS by using the ENGAGE-MINTS description to sell personalized metal containers used for novelty gift items, and offering ANNOUNCE-MINTS for sale on the Defendants' website.

### III.

The Federal Trademark Act of 1946 ("The Lanham Act") provides the following remedies for violations :

"(a) Profits; damages and costs; attorney fees "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125 (a) or (d) of this title, or a willful violation under section 1125 (c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover

(1) defendant's profits,

(2) any damages sustained by the plaintiff, and

(3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter

judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party."15 U.S.C. 111 7(a).

"In considering an award of damages, a trial court, in assessing the issue of damages under 15 U.S.C. § 1117(a), should weigh the equities of the dispute and exercise its discretion on whether an award is appropriate and, if so, the amount thereof. In each instance, of course, the court should explain its reasoning and the impact of the relevant factors." *Synergistic Intern., LLC v. Korman,* 470 F.3d 162, 176 (4th Cir., 2006).This Court has considered the following factors: (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off. *Id.*

As to the first factor, this Court finds that the Defendants did not have the intent to confuse or deceive the public as to the origin of the products available through It's a Wrap, LLC and its website <mymint-tins.com>, and therefore this factor weighs against a damages award. The Defendants' failure to investigate whether there was a mark for the mint product does not rise to the level of bad faith or gross negligence under the facts of this case. The *Synergistic* Court emphasized that "a lack of willfulness or bad faith should weigh against an award of damages being made, but does not necessarily preclude such an award." *Id* at 175.

The second *Synergistic* factor—whether sales have been diverted—involves the issue of whether the plaintiff lost sales as a result of the infringement activities. *Id.* Plaintiff asserted that the significant (40%) drop in sales of Mazelmint's products from 2008 to 2010, totaling a

decrease in volume of 237,000 units was due to the Defendant's infringing activities. The evidence presented demonstrates that Defendants sold only 1,161 ENGAGE-MINT tins in total, less than 1% of its overall tin sales, and did not sell any ANNOUNCE-MINTS and therefore could not be responsible for Plaintiff's loss of sales. Plaintiff failed to meet its burden of proving a causal link between the damages it seeks and the Defendants' Lanham Act violations. No competent evidence demonstrated that the drop in Plaintiff's sales was due to diversion to the Defendants' company or occurred as a result of the Defendants' infringement activities. Therefore, this factor weighs against an enhanced damages award to account for any amount of diverted sales. For this reason, the damages award will be limited to the Defendants' actual profits from the infringing use of the ENGAGEMINTS mark. This Court finds that Defendants have adequately proved the elements of its costs and profits, and Plaintiff's efforts to discredit Defendants' figures are unavailing and are rejected.

The third factor, adequacy of other remedies, addresses whether another remedy such as an injunction might more appropriately correct any injury the plaintiff suffered from the defendant's infringement activities. Where an injunction is an adequate remedy, this factor weighs against a damages award. *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 176 (4th Cir., 2006). An injunction is not an adequate remedy in this case. Although the Defendants will be ordered to remove any remaining references to the infringing marks on the <mymint-tins.com> website and related metadata going forward, the past harm cannot be cured via an injunction. Therefore, this factor weighs in favor of a damages award to compensate the Plaintiff for the Defendants' sales of the infringing products.

8

The fourth factor also weighs in favor of a damages award. Plainitff sought court relief immediately after becoming aware that the cease and desist letters did not produce the desired result of removing the infringing references from the metadata of the Defendants' website.

The fifth factor—the public interest in making the infringing misconduct unprofitable—addresses the balance that a court should strike between a plaintiff's right to be compensated for the defendant's trademark infringement activities, and the right of the defendant to not be assessed a penalty. *Id.* In this case, this Court concludes that an award of any amount greater than the actual demonstrated profits earned through sales of products bearing the infringing mark would constitute a penalty.

The final *Synergistic* factor—whether the situation involved a case of "palming off"—involves the issue of whether the defendant used its infringement of the plaintiff's mark to sell its products, misrepresenting to the public that the defendant's products were really those of the plaintiff. If "palming off" is shown, such activity should weigh in favor of a damages award. There was no evidence presented that Defendants held out the products to be that of the Plaintiff's. As no such activity has been demonstrated here, this factor does not contribute to the determination of a damages award.

The Lanham Act provides that damages shall constitute compensation to the injured Plaintiff, and not a penalty to the Defendant. 15 U.S.C. §1117 (2011). Plaintiff's alternative damages theories, proposed instead of disgorgement of Defendants' proven profits, all were unsupported by the evidence submitted and are rejected.

Finally, this Court concludes that this case does not constitute an exceptional case in which the law would allow Plaintiff to recover attorney's fees. Plaintiff has not established willful infringement on the part of Defendants. Willful infringement requires an intent to infringe

9

or deliberate disregard for the rights of the mark holder. This Court finds that Defendants adopted the mark at the request of a specific customer, without knowledge that the mark was held by another mint tin company. Defendants' post-notification conduct demonstrates the intent not to infringe on the Plaintiff's marks. Defendants took steps to stop the sale of infringing products when Burns became aware that Plaintiff was the owner of the marks.

IV.

Having considered the relevant factors and upon the evidence in the record, this Court finds that an award of $670.42, equal to the Defendants' proven profit from the sale of infringing products is sufficient to compensate Plaintiff in this case, and represents a reasonable award based on the balance of equities. Further this Court permanently enjoins Defendants from any further use of the marks ENGAGEMINTS and ANNOUNCEMINTS, or any variation thereof.

An appropriate order shall be entered.

July 20, 2011
Alexandria, Virginia

/s/ *LOG*
Liam O'Grady
United States District Judge